**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MAGNUS AADLAND, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 17-cv-11248-DJC |
| BOAT SANTA RITA II, INC. et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                                                                  November 25, 2019

**I. Introduction**

Plaintiff Magnus Aadland ("Aadland") has filed this lawsuit against Defendants Boat Santa Rita II, Inc. ("BSR II"), Boat Santa Rita III, Inc. ("BSR III"), F/V Linda,[1] Francis A. Patania and Salvatore Patania, Jr. (collectively, "Defendants"). Aadland alleges negligence based on the Jones Act against BSR II and BSR III (Counts I and V, respectively), a breach of the duty to provide a seaworthy vessel against BSR II and BSR III (Counts II and VI, respectively), a breach of the duty to provide maintenance and cure against BSR II and BSR III (Counts III and VII, respectively) and failure to pay maintenance and cure by BSR II and BSR III (Counts IV and VIII, respectively). Aadland makes two further allegations for breach of the duty to provide a seaworthy vessel against

---

[1] Aadland voluntarily dismissed F/V Linda, the subject of Counts IX and X, on September 8, 2017. D. 10.

1

the Patanias individually (Counts XI and XII).  The remaining Defendants have moved for summary judgment on all remaining counts except for Count III, D. 53.  For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART Defendants' motion, D. 53.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'"  Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are undisputed unless indicated otherwise.  The case concerns an infection Aadland, a commercial fisherman, suffered while employed on the F/V Linda and his resulting care.

### A. The Parties

Aadland was the captain of the commercial fishing vessel, the F/V Linda. D. 55 ¶¶ 4-5; D. 57 ¶¶ 4-5. BSR II is a Massachusetts corporation with its principal place of business in Peabody, Massachusetts. D. 55 ¶ 12; D. 57 ¶ 12. BSR II was, at all relevant times, the sole owner of the F/V Linda. D. 55 ¶ 13; D. 57 ¶ 13. BSR III is also a Massachusetts corporation with its principal place of business in Peabody, Massachusetts. D. 55 ¶ 21; D. 57 ¶ 21. BSR III does not own the F/V Linda and did not employ Aadland. D. 54 at 3. Francis Patania is BSR II's treasurer, secretary and director. D. 55 ¶ 19; D. 57 ¶ 19. Salvatore Patania is an officer and partner of BSR II. D. 57 ¶ 7.

### B. July 9, 2014 F/V Linda Trip

On July 9, 2014, the F/V Linda left New Bedford with a crew of five, including Aadland. D. 55 ¶ 22; D. 57 ¶ 22. On the morning of July 12, 2014, Aadland fell ill and thought he had the flu. D. 55 ¶ 23; D. 57 ¶ 23. By July 16, 2014, Aadland felt too sick to leave the wheelhouse to work on the deck of the F/V Linda. D. 55 ¶ 28; D. 57 ¶ 28. Later that same day, Aadland was unable to get out of his bunk to work. D. 55 ¶ 29; D. 57 ¶ 29. As a result of Aadland's illness, another seaman assumed captaincy of the F/V Linda on July 16 and returned to New Bedford so Aadland could get medical treatment. D. 55 ¶ 30; D. 57 ¶ 30.

### C. Medical Treatment

Upon the F/V Linda's return to New Bedford on July 18, Aadland was taken to St. Luke's Hospital. D. 55 ¶ 34; D. 57 ¶ 34. Aadland's blood cultures taken at the hospital tested positive for streptococcus bacteria. D. 55 ¶ 35; D. 57 ¶ 35. Aadland was in in-patient treatment at multiple medical facilities for an extended period, from July 18 to December 29, 2014. D. 55 ¶ 36; D. 57 ¶ 36.

### D. Medical Insurance and Payment for Treatment

Aadland received health insurance coverage through his wife's employer, GAF Engineering, from July 18, 2014 to October 2014. D. 55 ¶ 43-45; D. 57 ¶ 43-45. Aadland alleges that he and his wife paid approximately $800 per month out-of-pocket for health insurance benefits while Mrs. Aadland worked at GAF Engineering. D. 57 ¶ 57. Mrs. Aadland stopped working at GAF Engineering in September 2014. D. 55 ¶ 44; D. 57 ¶ 44. From October 2014 through April 2017, the Aadlands were covered by a Tufts COBRA health insurance plan. D. 55 ¶ 45; D. 57 ¶ 45. The Tufts COBRA plan cost the Aadlands approximately $2,000 per month. D. 55 ¶ 47; D. 57 ¶ 47. In April 2017, Aadland obtained health care coverage through Medicare. D. 55 ¶ 48; D. 57 ¶ 48. Additionally, Aadland pays $212.00 per month for supplemental medical insurance coverage. D. 55 ¶ 49; D. 57 ¶ 49.

### E. Payments to Aadland from Defendants

The parties do not dispute that Defendants have made multiple payments to Aadland, but they dispute whether such monies constitute adequate maintenance and cure. When Aaland was hospitalized between July 18, 2014 and December 29, 2014, Defendants did not provide any maintenance. In February 2015, Defendants paid Aadland $5,124.00 for maintenance retroactive to December 30, 2014 ($84.00 per day). D. 55 ¶ 52; D. 57 ¶ 52. Since February 5, 2015, Defendants have provided Aadland maintenance at the same daily rate of $84.00, D. 55 ¶ 53; D. 57 ¶ 53, including when he was hospitalized in July and August 2015. D. 56 at 14. Also in February 2015, Defendants paid Aadland $6,954.00 in "advances," the purpose of which is disputed by the parties, retroactive to December 30, 2014 ($114.00 per day). D. 57 ¶ 54. Since February 5, 2015, Defendants have paid Aadland at a daily rate of $114.00. D. 55 ¶ 58. Aadland disputes the characterization of these payments as adequate maintenance and/or any cure, but does

not dispute the amount he has received. D. 57 ¶ 59. Defendants also paid Aadland $5,388.24 in reimbursement for out-of-pocket medical expenses. D. 55 ¶ 56; D. 57 ¶ 56. Aadland does not dispute this payment but claims that this amount does not represent all outstanding out-of-pocket medical expenses, only some of such expenses. D. 57 ¶ 56.

**IV.     Procedural History**

Aadland instituted this action on July 7, 2017. D. 1. On September 8, 2017, Aadland voluntarily dismissed the F/V Linda from the action. D. 10. The remaining Defendants have moved for summary judgment on Counts I-II and IV-XII as to BSR II and summary judgment on all claims as to BSR III and the Patanias. D. 53. The Court heard the parties on the pending motion and took the matter under advisement. D. 63.

**V.      Discussion**

Aadland does not oppose summary judgment in favor of Defendants on Counts II, V, VI, VII, VIII, XI or XII. D. 56 at 1. Given the two Counts that also have been voluntarily dismissed against the F/V Linda, Counts IX and X, the only claims at issue on summary judgment are Count I (negligence based on the Jones Act) and Count IV (failure to pay maintenance and cure), both against BSR II.[2] Accordingly, the Court ALLOWS Defendants' motion for summary judgment as to Counts II, V, VI, VII, VIII, XI and XII.

    **A.      <u>Jones Act Negligence (Count I)</u>**

As his counsel clarified at the motion hearing, the negligence claim that Aadland presses here is that Defendants have failed to provide prompt and adequate care for him when they failed to pay his treatment at acute rehabilitation facility when his insurer refused to do so and instead

---

[2] Defendants do not seek summary judgment on Count III in which Aadland alleges he has received insufficient maintenance and cure from BSR II. D. 58 at 2.

5

funded his stay in a skilled nursing facility. BSR II, in moving for summary judgment on Count I, argues that Aadland has failed to produce evidence that BSR II acted negligently or that any such alleged negligence caused Aadland's injury in this alleged regard. D. 54 at 7-8.

Under the Jones Act, a seaman may "maintain an action where an employer's failure to exercise reasonable care causes a subsequent injury." Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996). Although a seaman still "must establish all the elements of a common-law negligence claim, the burden to prove causation under the Jones Act is 'featherweight.'" Napier v. F/V Deesie, Inc., 454 F.3d 61, 67 (1st Cir. 2006); Ferrara, 99 F.3d at 453. Liability, therefore, 'exists if the employer's negligence contributed even in the slightest to the plaintiff's injury.'" Ferrara, 99 F.3d at 453 (citing Toucet v. Maritime Overseas Corp., 991 F.2d 5, 10 (1st Cir. 1993)).

A shipowner's failure to provide prompt and adequate medical care can give rise to a Jones Act negligence claim. "A shipowner has a duty to provide prompt and adequate medical care to its seamen." De Centeno v. Gulf Fleet Crews, Inc., 798 F.2d 138, 140 (5th Cir. 1986). Liability for the failure to do so can arise in two ways. First, "[a] shipowner is vicariously responsible for the negligence of a physician it chooses to treat its seaman." Id.; DeZon v. American President Lines, Ltd., 318 U.S. 660, 667-68 (1943). There is no allegation that BSR II chose any of Aadland's healthcare providers so this basis of liability is unavailing for Aadland. See, e.g., Dise v. Express Marine, Inc., 476 F. App'x 514, 521 (4th Cir. 2011) (noting that "[l]iability does not attach, however, when a seaman selects his own physician"). Second, a shipowner can be directly liable for negligence where it fails to provide prompt and adequate medical care where it reasonably was able to do so. Randle v. Crosby Tugs, LLC, 911 F.3d 280, 283 (5th Cir. 2018).

As to any failure to pay for Aadland's treatment in an acute rehabilitation facility, where his insurer would not, this negligence claim against Defendants fails as a matter of law. There is no evidence that Aadland's treatment at the skilled nursing facility, not an acute rehabilitation facility, was inadequate. On July 25, 2014, Aadland's insurer, Tufts Health, denied coverage of Aadland's transfer to an acute rehabilitation facility, writing that "Dr. Claire Levesque has determined that the services requested do not meet the InterQual criteria because the services can be provided at a less intensive setting such as a Skilled Nursing Facility (SNF). Therefore, Tufts Health Plan will not cover Acute Rehabilitation level of care services." D. 57-9 at 2. Even if BSR II could have stepped in to pay for the acute rehabilitation level of care, there is no evidence in the record that the care Aadland received at the skilled nursing facility was inadequate. D. 58 at 5-6. Even the expert report of Dr. Alexander A. McMeeking, D. 57-5, does not support Aadland's contention that his treatment there was medically inadequate. Dr. McMeeking's report opines that Aadland's illness arose from the strep infection and resulting sepsis that developed while he was aboard the F/V Linda. Id. at 2. Although he notes that while at Bear Hill, the skilled nursing facility, among other things, Aadland experienced a higher than normal white blood count and blood tests indicated that he had a "recurrent bacterial infection" and that these conditions and symptoms "are related to, arise from and are consistent with him suffering from his illness as first experienced on the F/V Linda," id. at 3, nowhere does he opine on the quality of care that Aadland received at this skilled nursing facility or that it was medically inadequate. Without such evidence, Aadland has failed to show how BSR II failed to take reasonable care or how such alleged failure caused injury to Aadland as he must do to sustain a Jones Act negligence claim on this ground. For all these reasons, the Court ALLOWS summary judgment to BSR II on Count I, the Jones Act negligence claim.

### B. Punitive Damages for Failure to Pay Maintenance and Cure (Count IV)

In Count IV, Aadland alleges that BSR II has "negligently, willfully, arbitrarily and/or unreasonably failed to fulfill" its maintenance and cure "obligation to the Plaintiff and has failed to provide the Plaintiff with maintenance and cure in a timely and adequate manner as required by law and as a result is thereby liable for compensatory damages, punitive damages and attorney's fees." D. 1 at 19. The allegation, therefore, is not one just of failure to provide maintenance and cure, which is alleged in Count III and to which Defendants have not moved for summary judgment, but of callous, willful, or recalcitrant conduct warranting the award of punitive damages and attorneys' fees from BSR II.

The parties do not dispute that BSR II, as the shipowner, has a duty to provide maintenance and cure to Aadland, one of its seamen. "Maintenance . . . is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to a seaman's work and continues until he reaches maximum medical recovery." Vaughn, 369 U.S. at 531. "Cure is payment of medical expenses incurred in treating the seaman's injury or illness." Barnes v. Andover Co., LP, 900 F.2d 630, 633 (3rd Cir. 1990). To prevail on Count IV for punitive damages and/or attorneys' fees, Aadland "bears the burden of proving that defendant was 'callous, willful, or recalcitrant' in withholding maintenance and cure payments." Mulligan v. Maritrans Operating Co., No. CIV.A. 06-10492-LTS, 2010 WL 1930282, at *5 (D. Mass. May 12, 2010), on reconsideration, No. CIV.A 06-10492-LTS, 2010 WL 3038091 (D. Mass. July 30, 2010) (citing Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1051 (1st Cir. 1973)); Robinson, 477 F.2d at 1052 (concluding that the jury instruction on punitive damages was appropriate in light of "defendant's initial use of the venereal disease charge to justify withholding these payments, its refusal to pay past due unearned wages when notified that plaintiff

was in danger of losing his home, and its termination of all payments after plaintiff refused to accept its settlement offer").

Although it is far from clear that Aadland will prevail in showing at trial that BSR II was callous, willful, or recalcitrant in withholding any maintenance and cure, there is at least a disputed issue of fact as to whether he can do so. The parties do not dispute that Defendants have made some payments to Aadland: i) since February 5, 2015, Defendants have provided Aadland maintenance at the same daily rate of $84.00 (totaling $132,132.00), D. 55 ¶ 53; D. 57 ¶ 53; ii) in February 2015, Defendants paid Aadland $6,954.00 in "advances" retroactive to December 30, 2014 ($114.00 per day); iii) since February 5, 2015, Defendants have paid Aadland at a daily rate of $114.00 (totaling $179,322), D. 55 ¶ 58; and iv) Defendants have paid Aadland $5,388.24 for out-of-pocket medical expenses. D. 55 ¶ 56; D. 57 ¶ 56.

Aadland raises viable claims as to these matters for which there remain disputed issues of material fact. First, Aadland cites Defendants' failure to pay maintenance while he was hospitalized in July 2014 through December 2014 (even though they paid him maintenance during a later hospitalization in July through August 2015). Even as Defendants point out that a shipowner is not required to pay maintenance unless "the seaman is outside the hospital and has not reached the point of 'maximum cure,'" see Nichols v. Barwick, 792 F.2d 1520, 1523 (11th Cir. 1986) (citing Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir. 1979)), it is not clear that this applies where there has been no showing of 'maximum cure" and the shipowner itself is not paying any cure to the seaman (as his insurer was doing so) and the shipowner is aware of the seaman's dire financial straits, see Robinson, 477 F.2d at 1052, as the evidence suggests BSR II was at the time. D. 59 at ¶¶ 12-14, 16. Second, Aadland points to Defendant's failure to provide adequate cure. Although the characterization of these monies as cure is disputed, the amount is

9

not: where they paid him only $5388.24 for medical expenses, but his medical bills exceeded hundreds of thousands of dollars covered by his insurer and Medicare and Defendants are not entitled to setoff, see Gauthier v. Crosby Marine Serv., Inc., 752 F.2d 1085, 1090 (5th Cir. 1985) (holding that where a seaman incurs out-of-pocket costs or is forced to take on other hardships or life changes as a result of medical expenses, a shipowner is not entitled to set off funds that the seaman receives from his medical insurer). Third, Aadland alleges that some of the payments that were made to him were unreasonably delayed, D. 59 at ¶¶ 20-22, which may give rise to punitive damages. See Sullivan v. Tropical Tuna, Inc., 963 F. Supp. 42, 46 (D. Mass. 1997) (noting that a delay in providing cure, even where it did not aggravate plaintiff's medical condition, could still cause unnecessary pain and suffering to justify finding of willful failure to provide cure).

Although, as BSR II suggests, "partial" maintenance and cure might cut against any suggestion that any of the payments (or lack of greater payments) has been callous, willful or recalcitrant in paying the full sum of same, see Delaware River & Bay Auth. V. Kopacz, 574 F. Supp. 2d 438, 446 (D. Del. 2008) (concluding that shipowner that had provided seaman with "the funds necessary to meet his living expenses through payment or accrued annual leave and sick leave, partial maintenance payments, and LTD benefits did not amount to callous or recalcitrant treatment), such conclusion is not warranted as a matter of law. See D. 56 at 8-9.

For all these reasons, the Court DENIES Defendants' motion for summary judgment as to Count IV.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' partial motion for summary judgment as to Counts I, II, V, VI, VII, VIII, XI and XII and DENIES the motion as to Count IV.

Accordingly, the only defendant that remains for trial is BSR II and the only claims that remain for trial are Count III, maintenance and cure claim against BSR II, and Count IV, the punitive damages claims for failure to pay maintenance and cure against BSR II.

**So Ordered.**

                                                  /s/ Denise J. Casper
                                                  United States District Judge